Worker's Compensation Comm'n Counsel, you may proceed. Good afternoon, your honors. Counsel, may it please the court. The case here is pretty simple. Did you announce yourself to the record? Oh, I'm so sorry. Masha Chekov on behalf of plaintiff. Okay. The facts here are fairly simple. It is our position that the commission here did not rely on any evidence in the record and instead used facts and the truthfulness of the plaintiff to reach an inference that is not supported by the evidence. This is not a case where we have two competing medical opinions and that the commission chose to believe one doctor over another. This is a case where you have non-competing medical opinions. The only thing that varies is whether or not the petitioner requires surgical intervention for the lumbar spine. You have an IME physician who, regardless of whatever arguments we can make on what was in his report or what wasn't in his report, I think the most key evidence is that the IME physician, Dr. Gleason, gave an impairment rating on the lumbar spine. He would not give an impairment rating if he himself did not find causation. So what does the commission do? The commission takes the honest statements of the petitioner in this case, who prior to this accident is a healthy 23-year-old female who works as a housekeeper. She's involved in a motor vehicle accident. This is not a small or minor motor vehicle accident. This is pretty significant. Petitioner's exhibit number 13 showed pictures of the vehicle. We had significant inactivation of the vehicle, enough that caused shattered and broken glass in the back of the vehicle. Planes have struck her head on the vehicle. She has coughs. She has burns from the airbag. What the commission doesn't have in here is any facts to rely upon that say that this small, two-and-a-half-a-week gap of treatment in terms of her making any complaints to the lumbar spine is enough to defeat causation. We rely very heavily on the Heston case, and I think the reason for that is very simple. Heston says that we don't need medical opinions in the record in order to make a finding of causation. It says that the commission can make reasonable inferences based on the evidence, but in this case, there are no reasonable inferences to be made. This is not a case where the commission said we have a treating physician's opinion and we have an IME physician's opinion, and we find the IME physician more credible. There is nothing in the IME physician that says that the lumbar spine is not causally related. There is nothing in there that says, you know, this young lady who is perfectly healthy, 23-year-old prior to this accident, who goes to the emergency room and complains of head trauma, has multiple abrasions and neck stiffness, who then follows up with her primary care physician. The fact that she didn't complain for two-and-a-half weeks of lumbar pain, it is not noted in any of the records, and it is not noted anywhere by the commission, that they relied on anything to say, hey, this mere two-and-a-half week lack of treatment to the lumbar spine is sufficient to defeat causation. What do we do with Dr. Gleason's testimony that, quote, injury of August 22, 2013 is not a contributing factor to any current physical complaint? What do we do with that? Well, I think what that says is that Dr. Gleason, from his single brief examination, says, at this time, I don't think that she has any contributing factors. And I think if we read further into his report, he very clearly said that he finds a normal examination. Dr. Gleason goes on to say that he finds potential anatomic sources of pain in the MRIs. He himself reads the MRI and says that there is an L4, L5 protrusion with indentation on the fecal sac. He says that the findings reflected in the imaging studies correspond with the plaintiff's subjective complaints following the motor vehicle accident. He then goes on to say that she has either, A, a resolved lumbar strain or a temporary aggravation of her preexisting lumbar condition. There's causation. The IME himself says there's causation. The only issue would be whether or not there was a necessity of surgery. But what the commission goes and says here isn't, you know what, we agree with Dr. Gleason. We think she had a normal examination. That's not what they say. They say, hey, she's got this two-and-a-half-week gap of complaints in the lumbar spine, and because of that, the plaintiff failed to prove her case. They say that there's overwhelming evidence in the record to defeat causation, but they don't point to any evidence in the record. Well, wait a minute. Gleason clearly said there is no causal relationship between her accident and her current physical complaints, none whatsoever. Now, you can't get around that. You can make all sorts of arguments you want, but you can't get around that opinion. Now the question is, does the commission have the right to rely on that opinion to deny her benefits for her current condition of well-being? Well, I think what the commission did wasn't just say, we don't believe that she necessitates lumbar surgery. The commission took Dr. Gleason's opinion and said, we don't think that she had any injury to the lumbar spine, which is not what Dr. Gleason said. The commission didn't say, we find the lumbar surgery was not causally related. They say that there was no injury to the lumbar spine at all. And with regards to the commission's decision, which is all we have to look at, they don't provide any reason why they find Dr. Gleason to be more credible or not credible. Dr. Gleason's opinion isn't relied upon in their decision. Well, do they have to say that? I mean, to be technical, do they have to delineate the reasons why they believe one doctor over another? Or can they just say, we find one to be more persuasive or credible? Can't they do that? I believe that they could do that, but that's not what they did in this case. They didn't say that we find the Section 12 examiner to be more persuasive. They say that her gap in complaints of the lumbar spine is what they relied upon to make their decision. You seem to be opining that Dr. Gleason is somehow helping your case. How does Gleason help your case? Well, I wouldn't say he necessarily helps my case. I think what I allude to in our argument is that when Dr. Gleason helps our case in terms of saying that the commission is not relying on evidence in the record, because the way I'm reading the commission decision is that she had a gap of two and a half weeks before she complained about pain in the lumbar spine, and therefore she did not meet her burden of proof to show that there was causation or any injury whatsoever to the lumbar spine. So what I'm saying is that the commission wholly disregarded even Dr. Gleason's opinion. They had – this is the case – Okay, because Gleason – to summarize it a little bit – Gleason says there is injury or there is a problem with the lumbar spine, correct? He said that there was, and that by the date of his examination she had reached MMI. Okay, fine. But he's attributing that condition to a degenerative situation in a 23-year-old. Is that correct? Well, that's part. He says it's either a lumbar strain that has resolved or that it is a preexisting degenerative condition. And Dr. Sokolowski responds – I've never heard in the literature that a 23-year-old has a degenerative condition at this level. Correct. And I think Dr. Sokolowski discussed that. And again, this isn't a case where – I wasn't given an opportunity to say, hey, Dr. Sokolowski's opinion is more credible. This is why the court should have relied on Dr. Sokolowski as opposed to Dr. Gleason, because the way I read the commission decision, it wasn't we find Dr. Gleason more credible. It was we're not looking at any medical opinion. We're finding that this two-and-a-half-week lack of complaints in the lumbar spine was such a gap that the petitioner was unable to prove her case. So assuming that that is the decision or the basis for the decision by the commission, why can't they do that? What precludes that? Well, our interpretation of Heston is that there does not have to be medical evidence in the record. However, this is a case where there is medical evidence in the record. I don't find any case law that says the commission can just disregard all medical evidence. But it's conflicting medical evidence. Now, if it were consistent evidence that would lead to a reasonable inference of causation, I can see where your argument is going, that that would be an insufficient commission decision to support the denial of compensation. But I don't believe that the commission, Your Honor, made a decision that there was conflicting evidence of causation. There is no conflicting evidence of causation. There's conflicting evidence as to her necessity of surgery, which is what we were asking for. Your Honor, counsel, you can't say that. That just simply isn't so. Gleason's opinion is a conflicting opinion as to causation. You can't stand up here and keep telling us there isn't a conflicted opinion. There is. He said it. Claim it had at most a soft tissue strain or temporary aggravation of her preexisting condition. Her injury of August 22nd, 2013 is not a contributing factor to any current physical complaints. Period. That's a causation opinion. You can't deny it. And if you're candid with us, you won't argue it again. And I apologize if that's the way my argument is coming out, Your Honor. I am not saying that he is not making an opinion as to her current condition of ill and its causation to the underlying injury. What my opinion is is that the commission decision says that there was no injury at all to her lumbar spine. They are not agreeing with Dr. Gleason in saying, you know what, she had a temporary sprain strain. We are not approving the surgery. The commission decision says that there is no injury whatsoever to the lumbar spine. They're saying that no treatment to the lumbar spine is causally related. They're not saying that she had a sprain strain. That's not what the commission said. Overwhelming evidence supports a finding that claimant failed to prove her current condition of ill being with regard to her lumbar spine is causally related to her August 22, 2013 injury. They found a failure to prove a causal connection between the current condition of ill being. They never said she never had no injury at all. It's the current condition. There's no causation. But I think the fact that they vacated any and all award for all medical treatment, including the MRI to the lumbar spine, shows that they found that there was no injury to the lumbar spine. I don't want to take them for what they wrote. And I understand that. And for them to say that, you know, the single examination of Dr. Gleason, to say that she had either, A, a lumbar strain, which was an MMI, or that she had an aggravation of a preexisting condition in a 23-year-old, he himself goes on to say in that same IME report that her degeneration is of insignificance. So if he's saying that the degeneration is of insignificance, how can he say that the degeneration would have been the cause of her injuries? He then goes on to state that on his single examination on that day, she has a normal examination. But he goes on to say that her consistent complaints and subjective complaints, as reported in the medical records, are consistent with what he's found in the MRIs. So he's saying, you know, I see MRIs. They show potential sources of anatomic pain, which are consistent with the petitioner's subjective complaints. But on my single examination today, I find a normal examination. And therefore, I believe that she is at MMI. And I think what he does is he takes that one single examination and says, you know, on today, I think she looks fine. But, yeah, I still agree with all of her treating physicians. And she has these subjective complaints which match her MRI. And that's why I think Dr. Gleason further, you know, strengthens the argument that there was an injury to the spine. And petitioner can have more pain one day, less pain another day. And that is what happened here. And she complains to Dr. Gleason, and it's reported on that day that she has symptoms. The fact that he has a normal examination on that day is not outside of the norm of what an IME physician finds compared to a treating physician. But here we have multiple treating physicians, Dr. Foresh, Dr. Cicholowski, and Dr. Bayron, all of which find that she has consistent complaints of lumbar pain. They do not believe that the fact that there was a two-and-a-half-a-week gap prior to her symptoms manifesting was sufficient to defeat causation. And they find that her symptoms are causally related to the motor vehicle accident. I think I would go on to say that, you know, the commission makes reasonable inferences here and try to draw from the facts that maybe something else was the contributing source of her pain. But they don't say that. There is nothing in here saying, you know, we believe that tissue symptoms are related to this. Are they required to say that under any theory? Is there any case law that requires them to come up with alternative explanations? No, there is no case law that says they have to come up with alternative explanations. But if they're going to make reasonable inferences from the record, we have to look at their decision, and that's what we have to rely upon. And there is a support in that decision to say why it is that they don't believe that her condition of ill is causally related. What they discuss over and over and over again is that there's no complaints of lower back pain to the emergency room physicians, that there's nothing to the EMS, and that there's nothing in the first couple times that she sees her primary care physician. They don't rely on the opinions of Dr. Gleason. They don't say, this is the reason that we don't find causation. What they say, which is what this Court is to interpret, is that, well, she didn't complain about the lower back pain for two and a half weeks, and we think that that is a sufficient enough gap to defeat causation. Okay. Okay. Go ahead. I had a question in regards to the commission vacating the award of medical expenses. It says in the decision that medical expenses contained within PX6 through PX12 related to conditioners' lumbar condition of ill being, that that award is vacated. Are those expenses, do those date back to the original, to the first complaint, the lumbar complaint, and the diagnostic testing done from that point forward? They do, Your Honor. They do, Your Honor. And that is why I'm reading this decision as saying not, because the proper standard if this was one IME versus the treating physicians would be, we're cutting her off as of the date of the IME. We find this to be causally related, and we agree that she's an MMI with the IME. That's not what happened here. They vacated any and all treatment for the lumbar spine, and I'm reading it as saying, based on what they vacated, that they did not find any causally related injury of any kind. Well, did you identify as an issue that the commissions, if that interpretation is correct, that that decision is internally inconsistent, that they may have found that she suffered a temporary aggravation, which would have justified the award of certain expenses related to the lumbar, but that they, in fact, vacated the entire award? Well, I think the reason that I didn't see it as an error was because the way I was reading the decision was, was that they didn't find any causally related injury whatsoever to the lumbar spine based on that award. So I didn't, when I interpreted it, I didn't interpret it as, we find that the petitioner reached MMI by the date of Dr. Gleason's IME examination, and therefore we are vacating any medical going forward. That wasn't what the decision said. That's why I find it very hard to understand the commission decision, because the way I'm reading it is that they're saying, we're not relying on Dr. Gleason, we're not relying on Dr. Sokolowski, Dr. Foresh or Dr. Bayron's causation opinions, we're relying on this two and a half week lapse in her finding and reporting these symptoms, and therefore we're finding no injury to the lumbar spine. And why can't they do that? Why can't they just throw all the medical evidence out and take the claimant's medical history and her words that right after the action she denied any back pain? Why can't they do that? Because they can't just disregard any and all evidence in the record. I think that they can make reasonable inferences, correct, but to say we're disregarding Dr. Gleason, we're disregarding the petitioner's own treaters, and we're finding no injury whatsoever, they have to make reasonable inferences. Now, where does it say in here they found no injury? I'm looking at this decision, and I keep listening to your arguments, and I've got to caution you again, you've got to be candid with us. You can't run with the hounds and hide with the fox. There is no place in this decision where they say that this woman was not injured, her spine was not injured. What they say is she failed to prove that the condition of well-being of her spine was causally related to her work injury. That's all they said. They never said she didn't. They admitted that she testified that she was off work and resting in bed, and all of a sudden one day her lower back started hurting. They never turned around and said she wasn't truthful. They said they're unable to reconcile her testimony regarding the low back injury at the time of her motor vehicle accident with a significant lack of any lower back symptoms. Examination finds her diagnosis from the date of the injury until September the 19th. It concludes that overwhelming evidence supports the finding that Petitioner failed to prove her current condition of ill-being with regard to her lumbar spine is causally related to her August 22, 2013 injury. Nowhere in here does it say that she did not injure, her back was not injured. Nowhere. And I apologize. I'm not saying that they're saying that she didn't have any injury. They're saying that she didn't have, the way I read their opinion, is that she did not have any causally related injury based on their award and they vacated any and all medical expenses related to the lumbar spine. Which they would have if their contention is that the condition of her lumbar spine was not causally related to her injury of August 22. They would vacate all medical bills relating to the lumbar spine. They'd vacate it all. But you've got an IME that gives an impairment rating that says she did have an injury to her lumbar spine. She may very well have an injury. It's just not one causally related to her accident of August 22, 2013. Just that simple. But I apologize. Dr. Gleason very clearly says that she has a causally related lumbar strain or an aggravation of a preexisting condition. Dr. Gleason has said, and I'll read it to you again. I read it to you the first time. Claimant's injury of August 22, 2013 is not a contributing factor to her current physical complaints. Now, he couldn't have been any clearer than that. He didn't turn around and say, no contributing factors to her current physical complaints. The MRI findings appear consistent with normal age-related changes reflecting structural diagnosis within normal innocence suggesting clinically insignificant degenerative changes. No positive objective finding on physical examination related to the spine. He says no causal connection, period. And if there is no causal connection as between her condition of lumbar spine ill-being and her accident, the commission would obviously not award her any medical expenses related to the lumbar spine. It only follows logically. You keep saying this opinion says things it doesn't say. But, Your Honor, if he provides her with, if he says in other areas. Let's try it this way. I'll be real simple. A woman has a broken back. She comes in and the doctor says, you have a broken back. You have an impairment rating of 90-some percent of your back. But, oh, by the way, it has nothing to do with your accident at work. She's got an impairment rating, she's got no causation, and yet she's still got a broken back. Your logic would be, oh, my God, if he gave an impairment rating, it must be related to a work injury. Why? You'll have time on reply. I'll let you go way over here. But you'll have five minutes of reply. If you have opposing counsel, a chance to respond. Counsel, you may proceed. Your Honors, and may it please the Court. My name is Natasha Timotievich. I'm the author of the Respondent Appellate, Appellate and Punjabi Names. Your Honors, the issue in this case is very simple. Whether or not there is sufficient evidence in the record to support the commission's determination that the petitioner's low back injury is not causally related to her motor vehicle accident. Tell us succinctly what that evidence is. The commission relies on three specific groupings of evidence. The medical evidence from her treating physicians, Dr. Forrest, the EMS records and the ER records, as well as the application for adjustment of claims wherein the petitioner does not allege any low back injury causally related to her August 2013 motor vehicle accident whatsoever, as well as the petitioner's own testimony about when she first started to notice her low back pain, as well as her testimony that corroborates what is aimed at the treating records. All right, to which she's going to respond. Her central theme here has been, but she's clearly injured. The medical reports show that she's injured. So how do you respond to that? She may be injured. Yes? But as Justice Hoffman pointed out, just because there is an injury, that does not automatically mean that that is true. There's a causal connection. Exactly, Your Honor. And furthermore, with respect to her low back injury, the petitioner had 22 days and five different opportunities to mention any symptoms related to her low back. Yet she didn't. Her doctor did not document it. The EMS personnel who came to the scene the day of, the ER physician, none of them documented anything. I'm sorry, I shouldn't say none of them documented anything. On her first visit with Dr. Forrest, he did examine her low back. He documented that it was non-tender and did not give any diagnosis for her low back and did not prescribe any treatment for the low back. He did, however, address her cervical injury, and he continued to do so over the next two visits. And then on September 13th, he simply notes that she developed lower back pain. In her testimony, the petitioner states that she can't point to a specific reason as to why she has low back pain. She just felt it one day. And it's within the commission's province to examine all of the evidence, judge its credibility, give it weight. And that's what it did here. It looked at the medical evidence following the injury. It relied upon that. Counsel seems to hinge her entire argument on Dr. Gleason's opinion. There is nothing in the rules, in the jurisprudence, that says that the commission must rely on specific pieces of evidence. The commission gets to look at everything and decide for itself what it finds to be persuasive, what it finds to be the most credible. And the petitioner also relied on the Heston case. Well, in Heston, the court determined that the commission did have substantial evidence within the record to support its finding against causation. In that case, the commission relied on a timeline of events as testified to by the petitioner. And it relied simply on the petitioner's testimony and his timeline of events to determine that there was no evidence of causation to a morgue injury. And the court stated that simply relying on that testimony and making inferences from that testimony about the timeline events was ample evidence. The commission in this case is relying not only on the petitioner's own testimony about the timeline and when she started to feel this low back pain. It also relies on the medical evidence documented by treating physicians in the days and weeks following this injury. It relies on the application that the petitioner herself signed alleging what her work-related injuries are. Based on all of that, there's truly ample evidence in the record, not really substantial evidence in the record, to support the commission's finding that the petitioner's low back injury is not related to the mortgage. That's the second time you said that, and that's not what the commission found. The commission did not find that her low back injury was not causally connected. They found that she failed to prove what it was, and there's a big difference. They didn't come and attribute it to something else. They turned around and say, based upon these factors, nothing reported the day of the injury, nothing reported for weeks after the injury. The only testimony is that sometime after September 19th, you woke up in bed and your back hurt. Based upon that, overwhelming evidence, according to them, supports the finding that the petitioner failed to prove that her current condition of ill-being with regard to her lumbar spine is causally related to her work injury. That's substantially different than the commission making a factual finding that it was not. The petitioner was the burden part. He had to prove it by preponderance of the evidence. The commission said she didn't do it. Didn't prove it. Do you see the division? I do. This is a failure of proof case. The petitioner didn't carry her burden in the opinion of the commission. I do. Not that she was never injured. But I think my argument would remain the same. They looked at the evidence. They weighed it. They decided whether or not. Your argument does remain the same. I just wanted to make sure the argument was pointed at the right conclusion. Your argument is there's sufficient evidence to support the commission's decision. Correct. Is that correct? Correct. And for those reasons. Well, you said there's ample but not substantial evidence. That's what I was. That was interesting. Is there a requirement that there be more than ample? No, the requirement is that there be substantial evidence in the record. Actually, it's sufficient. Oh, sufficient. I'm sorry. You're going to give yourself a higher burden. I'm sorry, I misspoke. It keeps going up. The requirement is that there is sufficient evidence in the record. Which is somewhat synonymous with ample. Surely. Regardless, there is enough evidence in the record to meet the legal requirement to support the commission's findings. And for those reasons, the respondent respectfully requests that this panel affirm the circuit court's confirmation of the commission's decision. Thank you, counsel. Counsel may reply. I'd like to address a few brief issues. This isn't a case where the petitioner just woke up one day and felt pain. This wasn't a case where she said, oh, I complained, I complained, I complained, but no one recorded it. Petitioner was completely and utterly truthful during both direct, cross, and recross. She stated, I didn't feel that specific pain. I felt general soreness all over my body. I was in horrible pain. This isn't an injury where someone lived in something and they had an isolated pain in one area. This is an injury where someone has suffered multiple injuries to multiple body parts. Where she is following doctor's orders, she is in bed for the first few weeks following the accident, she has not started physical therapy, and she is taking pain and anti-inflammatory medications to help with her pain and her multiple symptoms. What she stated is that that day she began to notice specific pain in the lumbar spine. That started in the lumbar spine, began shooting into her right buttock, and by the next day moved to her foot and began having weakness in the leg. This is a case where you have someone who has multiple injuries, where they are suffering from those multiple injuries, where she testified to that and was truthful and honest and said, listen, everything hurt. I was in a serious car accident. My entire body was sore. Everything hurt. But then after a couple of weeks, that's when I began to be able to differentiate between my symptoms. During this visit is also the first time that she complains of parathesis and numbness in her hands. The commission is very clear. If we go through their decision, they truly and honestly rely on the fact that she did not mention complaints in those first couple of weeks of the lumbar spine. But you also have a young lady who is perfectly healthy and able to carry out all the requirements of her heavy-duty job as well as her daily activities without any pain or problems. You have a doctor who says, well, she might have some preexisting conditions. You have a treating physician who cites, too, the fact that there is absolutely no literature that says that there is significance of any degenerative changes in the general population of a 23-year-old. You have a young lady who is sitting at home, who is resting, who is taking pain medication, which is aimed to dull her symptoms, and then begins to be able to feel specific pain in specific body parts. She has burns in her arms. She has cuts on her face from the glass and from the airbag. And then she begins to develop this lower back pain, and she comes to her treating physician and mentions it. Now, the commission on numerous occasions uses dates like September 19th on a couple of occasions. I think it's pretty clear there is no date of visit of September 19th. I believe that they mean September 13th, which is when those first complaints were documented in Dr. Forich's records. But there is nothing inconsistent in the medical records with regards to the progression of her symptoms and the progression of her injuries over time. And I believe that the commission decision, the way it is worded, shows that the current condition of ill and the condition to her lumbar spine is not causally related, that there isn't enough evidence in the record to support that decision. Because both the treating physicians as well as the IME, there is something wrong with this girl. And I understand Justice Hoffman's position that the way he reads the IME is that there was no causally related injury to the lumbar spine. He's not saying that there is an injury to the lumbar spine, but he is saying that he doesn't believe it's causally related. Right. But he also says that she has a perfectly normal examination. So he's not saying that she has any injury because he says she's fine on this date of my examination. And that is inconsistent with all of the other physicians who were seeing her during this time that noted that she had pain. And it's also inconsistent with her own reports of pain to him on that day. Counsel, your time. Thank you. Thank you, Counsel Balls, for your arguments in this matter. We take that advisement and written disposition as a valid issue. Please.